the assumption that somebody on the assumption that there may be some people in the audience that weren't here before I will just say that judge Bowery in the courthouse that is her regular place of business and I am pleased to be being accompanied by Judge Slobider and Judge Hardiman in the courtroom that used to be where I worked. I won the third circuit. I know. Really? Are you sure? I'll show you. Did I swear you in? No. Okay then I can't be sure. Her chambers are here. Okay this is the afternoon and we do have a serious case so we'll hear Ms. Sadlowski from the government first. The acoustics in this room are terrible. Yes. Famously terrible. Please ask me to speak up if I start to drop my voice. May it please the court my name is Caroline Sadlowski and I represent the United States of America. I'd like to appeal because when faced with a guideline it found too severe the district court did not attempt to identify Congress's and the Commission's policy rationales and reasonably justify its disagreement with those policies. Instead it found six reasons to categorically reject the entire penalty structure and avoid the enormous effort of justifying its disagreement with the district court hadn't said seven-eighths of that which it said and merely said at the end of the opinion I have problems with this guideline I have problem with the guideline as used in this case and therefore this is the sentence I'm going to impose. Would the government appeal? If the if the court had provided reasons for that decision. Yeah and the reasons are the reasons for the latter part of her opinion. Would the government have any basis to appeal? I mean after all she isn't entitled to disagree we know from the Supreme Court district courts can disagree on policy grounds. The district courts able to disagree on policy grounds but did not reject this guideline because it identified its policy disagreements with this guideline. It rejected this guideline for six reasons each of which are erroneous. If it had provided policy reasons for saying I won't consider this guideline it's unreasonable in these ways. If it was Congress's intent to do this and Congress was wrong it was the Commission's intent to do this and the Commission was wrong then depending on what those reasons were then the government wouldn't be bringing this appeal. The defendant attempted to court had addressed the government's briefing. The government's briefing was Congress's and the Commission's rationale. The defendant couldn't do it. The three lines in the entire record that the defendant claimed to identify do not represent the court grappling with either the Commission's or Congress's rationales in deciding to reject this guideline. It specifically chose six other reasons to do this. I thought it was nine I thought it was nine reasons or was it ten reasons all of which are in error right? All of which are in error you say. In error. Every one of them is wrong. Every one of the reasons that the court every one of the there's six reasons the court identified and other procedural errors. We're told it's nine. Every one of them is wrong. Every one of them is wrong and we can and I'd like to talk about the three most important I'd like the court I'd urge the court to find they're all wrong because they're all misleading to district courts but three of them are very important. One of the problems I think Judge Slover's question puts frames it well is we are used to it to the extent there is a typical sentencing case and I know one can argue every case is different and individual but to the extent we see the typical sentencing appeal is the judge's failure to give explain. You can't make that argument here. I mean there are there is so much before us. Maybe the court said too much but certainly this is if you look at it a 46 page opinion and everything else that went before under a microscope as you've done as is your right to do you're going to find stuff. Of course you're going to find something and those are the six or nine or ten procedural errors that you allege here correct. Now what are the three most important ones? But I'll backtrack for a second the government both argues that the court gave six erroneous reasons and didn't give the reasons it needs to give to justify rejecting the guidelines. And but you did say there were three that the three particular and Judge Barrett asked you I mean all right you've said okay we you I preserve all my other arguments but she said what are the three? That when the first is that the when the Commission directs a guideline that courts may disagree that may disregard it on that ground alone not for the reasons Congress gave but because Congress directed portions of that guideline. That was an important part of the court's rationale. The second one is that Congress lacked any rationale beyond revulsion. I'm sorry say that in different words you say the first is the first is that the court found that because Congress was too involved in this guideline that this guideline lacks an empirical basis it is an improperly formulated. Too involved is not what the court said. The court said that directed. That's right. Directed. Intruded in a way. When Congress directed the Commission. Ordered the Commission. Right. That's not with too involved that's a different it's different. When Congress directs the appropriately under the law. The law is that the Commission is required to conform its guidelines to congressional directives. That's in stark contrast to Kimbrough right where Congress Congress's silence over the years after it initially established the hundred to one ratio was definite. Yes. This seems to be the inverse of Kimbrough. Here Congress is repeatedly ratcheting up the penalty saying we've got a real problem here. We're not solving it it's getting worse and we're going to keep punishing it more severely. That could be misguided. But. And courts are entitled to disagree with Congress's decisions in that way. But that's not what the court was. What she did. No it wasn't what she did here she said. She said if you read the opinion she found six reasons why she didn't have to address what Congress did. She doesn't have to address it because Congress was involved and directed these guys. I don't think so. She's talking about how they're ratcheted up. How how someone you know how someone effectively guidelines is above the statutory maximum for conduct. That leads to the second error. No you're you're parsing it so so finely. Is that is that really fair? I think it's entirely fair because what the court said is that Congress didn't have a reason for what it did. It didn't have any rationale. The court looked for the rationale. Even in the period of time when Grover was involved in plea negotiations the base offense level went up I think six levels. I mean it's Congress is directing very very increasingly onerous in my view. The government does not disagree that courts can find that this guideline is too severe. At bottom that's what you found. That's what you found. It isn't what she found because of the reasons the reasons that she had for finding it were wrong. She found Congress didn't have a rationale for raising the penalties. Congress had several rationales which it laid out in its legislative history and which the court was provided with but ignored and said there weren't any reasons. This is very significant. Every district court who have no reason for being there. So what would you have us remand to Judge Hayden for amplifying to amplify her reasons based now on the October 2009 history issued by the Commission and US v. Dorvey? Judge Hayden needs to start from scratch in explaining why. Judge Hayden needs to start from scratch because she didn't explain why Congress was wrong. She said that it's too severe which this court found in Leitchock is is too general a statement you need to give reasons and then the reason she gave do not engage Congress's or the Commission's reasons. Well the Commission didn't give reasons I assume because Congress has had its hand in this issue every step of the way. Congress and the Commission have both given reasons along the way for various incremental adjustments. But isn't it true though that the Commission has been relatively silent in contrast to the crack cocaine guidelines where the Commission was extremely active at complaining about the inappropriateness of the hundred to one ratio? The Commission has said specifically that it worked with Congress to increase these guidelines to make them more reasonable to make them more rational and it thinks that it has been effective as well. Oh is that what it says in the 2009 history? On page one. But throughout? Throughout? Throughout the period if you look at the time from the time the Commission came in. Throughout the 2009 history the Commission report I don't know that they're they're saying oh we work together isn't it wonderful in an act of fellowship. It's really not what what this Commission is saying. Mr. Eplaska you told us there were three so far you've got number one. I want to be sure. Number two is that in finding and adopting the findings of the two district courts and the and the person who testified in finding they couldn't find any rationale for this guideline that that was error. Was that Berman? Berman. Berman. Berman who didn't study the child pornography guidelines and couldn't locate any rationale. Creates the impression in district courts minds that there is no reason that Congress or the Commission increased these penalties over time or broke them out in the particular way that they did. Created the enhancements that they did. Increased the offense levels that they did. This is exceedingly misleading for district courts everywhere and the government urges this court to find it wasn't true because courts need to stand on the shoulders of Congress and the Commission. They're welcome to disagree with all of the reasoning that Congress undertook and to say you went too fast your reasoning doesn't make sense to us it's illogical but they need to start by identifying the reasons. I'm not sure that courts can disagree with what Congress did. Courts can disagree with what the Commission did. I think that's what the Supreme Court said in Spears and Kimbrough but I'm policy not sure that the Supreme Court has ever said we can disagree with what Congress did. Congress is the one who passes the laws. Well that is the reason that courts should be deferential and should consider the reasons that Congress gave especially given that it is their institutional resources and their institutional role to make these findings. The Supreme Court has never said in any context except in the crack context that there isn't that that there is no policy behind this the courts need to consider. The Supreme Court has said that when there is a policy and this court has said when there is a policy courts need to identify it and consider it by saying there wasn't any policy. And in Arrow Lucia in opinion authored by Judge Sloviter we said that there could be a policy disagreement in the fast-track context. Yeah. So Supreme Court in Kimbrough says district judges can have policy disagreements on crack cocaine we have said yeah the judges but so you've got the Supreme Court in our court in these two different areas my question to you is do you concede that in the child pornography area district courts have the same latitude to express policy disagreements with the guidelines? They may but they need to provide substantial justifications that's the finding of this court in the Supreme Court if you're not arguing substantive reasonableness here you're only arguing procedural. Yes we say these are procedural errors to throw out a guideline categorically to say this guideline has no value. Well categorically off the 46 page opinion and found multi thousand page transcript is probably a poor choice of phrase but I'm not I'm not saying the court didn't put any thought into this I'm saying she had a very ambitious agenda which was to get rid of this guideline all together. That's very pejorative. I think that's really unfair. I'm sorry a goal I don't mean it in a pejorative sense I say this is this was what she set out to do is not to consider the reasons that Congress gave for the guideline. All right they considered them in Dorvey they considered many of the reasons that that you argue here and that Judge Hayden whether in the words you would have liked or in other words did consider but they considered the Second Circuit considered them in terms of substantive reasonableness not procedural error substantive reasonableness which you are not which you are not arguing here correct? They were they were considering whether the courts was substantively reasonable in finding. That's right so many of the issues you're now raising and saying Judge Hayden did not address adequately or address at all the Second Circuit considered under substantive reasonableness which you're not if we were to agree that you're really in spite of what you say what you have before us is not a procedural error case but a substantive error case you lose. This court no if you interpret my arguments to be substantive arguments I would still like the court to please consider them rather than to disregard them this courts precedent. You don't like the reasons you don't like her reasons she didn't give the right reasons or enough reasons you know she didn't do it the right way that's that's not procedural error is it isn't that substantive error if error it be? This court has found in Levinson and Sevilla and Merced that when the court does not give the reason does not adequately explain its rejection of Congress and the Commission's rationales and penalties that is procedural error we do not accept that is that that the statutory mandatory minimum was the substantively reasonable sentence for Mr. Grober but what we're saying is it's impossible to evaluate whether that's a substantively reasonable sentence that the judge would have given if it had properly considered what it was supposed to consider at sentencing. Well the judge gave one the judge gave at least one overarching rationale it seems to me and that was that when you consider all of these enhancements the guidelines range is above the statutory maximum. But that raises a question in my mind I'd like to hear from you on here from Mr. Goldberg also does it make sense to look at 2g 2.2 as one integral whole or should we look at these various subparts because these various subparts have tremendous ramifications as to how far down the guidelines table we go. Yes I understand what you're saying that that if you actually pile on every single enhancement and you only are charged with one count in that rare instance then you'll go above the statutory mandatory the statutory maximum for that single count. And so you can consider whether you think all of those together are too great as a matter of policy or whether individually they're too great accumulated together. What you what you can't do the third error that the court made was to say that looking at who is charged federally in this crime is it is a portrait of who is the typical offender. This interesting commission in this crime and then after gathering that empirical information make a normative assessment of how serious the crime is. But it's error to say that the typical offender is someone who charts at the max because those are the people the federal government is selecting for prosecution. What if what if one of her whatever how many reasons that you complain are wrong what if only one is wrong or two is wrong you know and seven are right. If if it is possible to say that this guideline was not properly formulated because a plea agreement or because of plea agreements the other reasons would still be wrong they would still be procedurally erroneous reasons and there's one that you can't affirm the the district court for making and that is for not identifying Congress's and the Commission's rationale. That's that's at the core of what it was supposed to be doing when it's undertaking to a policy. Suppose we suppose we send it back for her to do just that what do you think is going to happen? It would that would be the meaningful moment when the court actually says you know here's where Congress went wrong and here's where the Commission went wrong. I take issue with. Where she pins it into the sentence income reports that Dorby cites she pins it into the 9th 2009 history and she cites Dorby and she says five-year mandatory minimum you'd be satisfied. It wouldn't be sufficient to cite Dorby. Dorby echoes the exact same errors. You know what I'm saying. Dorby are the errors. These are these are very important errors to say that the Congress's direction to the Commission. But Dorby cited the purported rationale and Dorby cited sentencing Commission and Dorby seemed to the extent your alleged error that Judge Hayden committed. I mean Dorby was very specific about what it was saying and doing. So she does the same thing maybe Dorby's wrong but but she did it at least she pinned it into where you say it has to be pinned into. Dorby really mirrors her opinion and it's errors. She wouldn't be doing the right thing. Then you come back here and tell us well her now her now she gave reasons but the reason you know other reasons but now they're wrong too. I was reversed many years ago. Two times. First I gave the wrong I gave this reason got reversed. Second I gave this reason and got reversed. I mean you know I couldn't win. Then so then you've got. Then I went in the court. If the court identifies the errors that the court made she can't come back with the same ruling as Dorby. The only thing that Dorby found in the entire sentencing Commission history that justified throwing it out is this disagreement about the extent of the application of the computer enhancement. On that basis it analogized the fact that the Commission had completely rejected the crack cocaine guidelines. This tiny disagreement over this massive 15 year working together out of policy. They're not equivalent. You may have answered this. Judge Barry may have asked this but I'm not sure I understand your answer. Just does the government believe that the child pornography guidelines are so reasonable that a district court cannot reasonably disagree with them? No. That's not your position. That's not my position. Okay so then what you take issue with is Judge Hayden's articulation of her reasons. Yes. And that's procedural error. Yes it is it is her failure to justify her disagreement with what Congress and the Commission said were its reasons for its penalties. This is the core role of judges in engaging in a policy disagreement. It's the reason we have put Congress and the Commission in charge of making policy is that we consider them to have the institutional resources to do this well. Is it Congress or the Commission? As I understood it it was supposed to be that originally Congress said we're going to give this all to the Commission because the empiric determinations as to what should be the guidelines and then in this in this area as I understand Judge Hayden's opinion Congress took over. Is that your I mean I don't understand what the government's real objection is. It is exactly that. Congress did not cede its entire role in sentencing to the Commission when it asked the Commission to undertake the role of looking in an empirical way studying what judges do at sentencing trying to compare between areas of the law whether sentencings are proportional and fair. You're saying that's what it should be. It gave them a category of things to work on but it didn't remove from itself the old the much larger category of considerations that go into determining fair penalties in criminal justice. But you're saying then that the District Court can't disagree with that. I am saying that the District Court can disagree with it but it can't say that because Congress continues to make normative assessments and to disagree with the Commission to take it retained the role of saying to the Commission to review the Commission's work to give the Commission directives to say here's what we think are the proper criminal penalties. That's what Congress has done. Congress retained its role to do that. It is not improper to do that. And the District Court you're saying can't say Congress did it wrong? The District Court can say in the specific Congress's directive to the Commission was bad as a matter of policy. But it cannot say that because. Isn't that what she did? Isn't that exactly what her opinion does? No her opinion simply says something much more basic and wrong which is that because Congress talked to the Commission and disagreed with it then this guideline is bad. Because Congress didn't agree with the Commission. Congress talked to the Commission? Congress gave directives to the Commission. Congress's job, Congress established the Commission and in establishing the Commission reserved for itself the role of reviewing the guidelines, rejecting them when it didn't agree with them, adjusting them when it did agree with them. Because Congress has separate institutional concerns. Congress hears victims testify, it hears defendants testify, it hears academics testify throughout the whole course. Congress runs for re-election. Congress does run for re-election. And people, the populace weighs in. But that's what the District Courts do. The District Courts take victim impact testimony. I'm not sure. Absolutely. But the District Courts cannot look at the huge volume of testimony that Congress can. But then you're taking back, that's why I asked you at the very beginning, you're taking back what you said when I said can the District Courts disagree with Congress's policy? No, I don't say that they can't. I'm saying they need to identify Congress's policy before they can then reasonably disagree with it. Congress's policy, she said, was to keep making these sex offender, these child sex pornography cases more stringent. That's what I understood. Right, that was all she said. That's how she identified Congress's rationale. She said it in the long run. Yes, she said it. Well, but she didn't, she said it was only to make it stringent. She didn't say because the market for child pornography as it increases creates more harm to children by creating more images of child pornography. That is the reason Congress makes this more stringent. You know, the only thing I think she didn't say, I have to say, Milo, we looked at this right here. Well, she didn't talk about deterrence. I think she had two lines about deterrence. You haven't said a word about her omission of deterrence. She didn't talk about any of the 3553A. Oh, no, that's not fair. No, I don't mean with respect to... She took 3553 at length and went through each point. No, I don't mean with respect to Grover. I mean with respect to... Well, but that's what's before us. But Merced said that if you are going to engage in a policy disagreement with Congress, you do it on the basis of the 3553A factors with respect to that policy. You say, I'm going to talk about the seriousness of the offense. I'm going to talk about disparities. I'm going to talk about protecting the public. And you think about, you have to address the reasons of Congress and why you disagree with them with respect to each of these things. And Congress did not simply say this crime is too serious. Your time is way up. All right. I'm sorry. We'd love to sit and listen to you. If we give you extra time, we're going to have to give Mr. Grover extra time because he'll have demanded. Come on. I'm not jealous. Good afternoon. May it please the Court. My name is Peter Goldberger. It's my privilege to represent the appellee and cross-appellant David Grover. District Court sentenced Mr. Grover to five years in prison, three years of supervision, and a lifetime of sex offender registration. This is a severe penalty and a severe combination of penalties. And you only disagree with the five years minimum? Yes. Yeah. That's your plus appeal. Yes. The government has once again reiterated that they don't consider this sentence to be substantively unreasonable. In arriving at that sentence are the reasons that we've already heard discussed. She was very clear, but for some reason we can't get you. What's he doing? Is he too close or too far? I think you need to pull it up a little bit. Which one? The mic. Pull it closer to you. Closer? Yeah, because we're having trouble. We're having trouble. Okay. Either that or get on your knees. If you can get it up higher, I don't know. I'm usually on my knees in this court. I noticed. Go ahead. And I realize the government has not conceded that the sentence is substantively reasonable, but they have not argued that it's unreasonable. If I may, I'd like to take the first few minutes to talk about my cross appeal. We have two arguments. One is a pure statutory argument. Section 3551 is the gateway to all federal sentencing. It tells federal judges we rarely look at the statute, but it's the statute which says in sentencing a federal offender, the judge shall apply this chapter unless another law specifically provides otherwise. Some statutes passed by Congress creating what we think of as mandatory minimums specifically provide otherwise. Those are laws which say, in words or substance, notwithstanding any other provision of law, the judge shall, the judge must, the judge must not. The sentence statute under which Mr. Grover was sentenced, 2252A sub B, 2252 capital A sub B, does not specifically provide that other provisions of law shall not apply. It simply says the judge shall impose at least a five-year sentence. If that constitutes specifically otherwise providing, then the word specific has no meaning, which is, of course, not how we construe statutes. Congress knows how to specifically otherwise provide. There are mandatory minimums, I mentioned one or two, that do say notwithstanding any other provision of law. But when Congress reformed sentencing law, it created a rule that said this rational system prevails over rigid and mechanical systems and over purely discretionary systems unless another law, unless we in Congress provide specifically otherwise. In other words, Congress imposed on itself a duty to think about the effect it was having on the general sentencing system. For lack of such a provision, and it doesn't have to be any particular words, but anything that could be fairly described as specifically otherwise providing, the language in 2252 capital A sub B does not create a mandatory minimum. The second argument is a double jeopardy argument. Under U.S. v. Miller, it was plain error to sentence Mr. Grover on all six counts. The judge could sentence him on counts one to five or on count six. Mr. Goldberger, let me just say. Sure. Even if you're right that there was error here, under the plain error standard, that error had to seriously affect the fairness and reputation of the judicial process. If Grover had raised this issue before the district court, the government would have had the opportunity to clarify which images were charged in which count. So how can you argue that this result that you seek would, if not award it, seriously affect the integrity of the judicial process? The government could not have clarified count six by excluding the particular images charged in counts one through five, which are quite specific. I mean, there's no question what five. Each of them involves one or a group of images that were attached to a particular email. So we know exactly what images those were. The only thing it could have done is, hypothetically, you're suggesting, say, oh, we exclude from count six the images charged in counts one through five. That it could not do because the offense in count six is the possession, not of the images, but of the computers containing any such images. All the images on those computers and disks are what make the possession of the computer illegal. It's the possession of the computer that's illegal, as Congress wrote that statute. So it would be a completely arbitrary evasion of the double jeopardy problem to have acted that way. But on top of that, the defendant has no burden to help the government get out of a trap it has set for itself. Mr. Klobuchar, I really think that I know that you would like to press your cross appeal, but why don't you go on to answer the government's appeal? I think that might be worthwhile. And I agree. I think these arguments are clearly set forth in the briefs. We've read the briefs. Yeah, why don't you go ahead. Okay. You heard what Ms. Sedlowski said. How do you answer what she said? May I interject? Sure. Before you go to the merits, could you address the standard of review? Yes. I think both sides correctly pointed out that it was Dictum that talked about closer review in Kimbrough. But we seem to adopt that approach in Lychok when we said that to justify a policy disagreement involving the same guideline as the one at issue here, that the court had to provide a, quote, sufficiently compelling reason for the disagreement. So I'm interested in what you think the standard of review is for us. Yeah, that would not be the same suggestion that the Supreme Court made in Kimbrough. If I could kind of start, let me start with Kimbrough and then get to Lychok. In Kimbrough, you're referring to the passage where the Supreme Court said, after saying courts are free to disagree with guidelines that do not reflect Congress's traditional, excuse me, the commission's traditional institutional role, that if the sentencing court wishes to disagree on policy grounds with a guideline which does reflect the traditional institutional role of the commission, then perhaps, the Supreme Court said, a closer review of that policy decision would be warranted. Lychok was a child pornography case sentenced under the same provision, 2G2.2, a guideline which does not reflect Congress's traditional institutional, excuse me, the commission's traditional institutional role. That is, it does not reflect the role the Supreme Court was talking about when it used that phrase. The government's argument on this somewhat confuses what the Supreme Court was talking about. But why should we accord more weight to the commission, which is an unelected part of the fourth branch of government, exercising its traditional role? Why would we give that more deference than Congress itself? Well, I think this is explained in the very passage in Ara Lucia that you referred to, where the court, Judge Ambrose's opinion, joined by Judge Lopeter. Yeah, I know. I know what I wrote. I didn't write that opinion. That when Congress addresses itself to the courts, what it says is binding on the courts. But when Congress chooses to address itself to the commission, what Congress says to the commission is not binding on the courts. What the courts must do is react to what the commission does in the normal way the courts relate to the commission. So when the court looks at what the commission has done, and what the commission has done is in response to what Congress has told the commission, Congress is relating to the commission, not to Congress. That's what Ara Lucia says. And therefore, it is not deferring, or any, Congress, the courts don't defer to Congress. The courts obey Congress. When Congress passes a law which says the court shall consider this, do that, don't do this, Congress doesn't speak to the courts in the provisions that are referred to in the child pornography history. None of those provisions were addressed to the courts. Could Congress pass a statute next week that says in distribution cases, there's a five-year mandatory minimum, but if that distribution case involves sadomasochistic images, then it's a ten-year mandatory minimum. Sure. And could Congress say that if it involves more than 600 images and sadomasochistic images, it's a 12-year mandatory minimum? If it's specifically provided that the Sentencing Reform Act did not apply, and any other condition on, and didn't violate the ex post facto clause, and it wasn't unduly vague, and everything else that makes a statute valid. Sure. So Congress could do all that, and that seems to be what the commission has done following the will of Congress. So what's the distinction? The distinction is that when the commission does it, it's advisory. And when Congress does it, it's a statutory duty. And Congress knows that difference, and it chose not to impose these obligations on the courts, but to direct the commission to advise the courts a certain way. The commission then obeyed and advised, but the courts don't have to follow that advice. They are no more obligated to follow that so-called advice than any other advice the commission gives. And, in fact, the Supreme Court strongly suggested in Kimbrough that what the commission's advice is entitled to more weight, if ever, when it exercises its characteristic institutional role, that is, its nonpolitical expert role. But in Kimbrough, the sentencing commission in 2007, I believe, reduced the ratio, and Congress allowed that to pass through. I mean, that's a pretty strong statement that the 101 ratio was too extreme. Don't we have the inverse situation here? No. The commission, when Congress fails to veto a guideline, which has been laid before it the way the rules and procedure are laid before Congress for a 180-day consideration period, and then it fails to veto them, they do not become statutes. They become guidelines. During that period, Congress can enact a statute to provide otherwise. When it doesn't, it does not put the imprimatur of a statute on the guideline, which then becomes effective on December 1 of that year. Let me ask you about one of our decisions. In Guth, this court held that a district court's decision to give a defendant a significant substantive departure from the guideline range sentence was substantively unreasonable because the district court's decision was largely based on the belief that those who possess and receive child pornography are less culpable than those who create and distribute it. We reversed the district court. Why doesn't that holding significantly undermine the district court's reasoning in this case? Because there has been a lot of water under the bridge of sentencing reviews since Guth. Guth is of questionable persuasive value today. But it's still our precedent. It's a panel precedent that precedes Tomko and precedes the thorough discussion. Well, Tomko, as I recall, it wasn't on the child pornography guideline. No, but it was on what we mean by death. I mean, I was on the consent side, but that's not important. It emphasizes the weight of the deference. But more important than that, it precedes all of the policy disagreement analysis that we've seen in Aralocia, in Merced, in Lijak. We know a lot more. The law of the circuit has developed a great deal further on the authority in interpreting Kimbrough and Spears, interpreting the authority of a sentencing judge to disagree on policy grounds. I thought Guth at bottom was a failure to state reasons. I think... I mean, at bottom, that's really what it was. To justify a result with any reasons at all. It was a cursory statement of reasons, yes. And Lijak, I think, turns on that as well in the end. Lijak turned on the I disagree because I disagree kind of rationale. Judge Hayden did not fail to acknowledge the rationale behind Congress' concern with child pornography. She talked about the National Center for Missing and Exploited Children policies and practices. She explained their theory that children depicted in child pornography are repeatedly victimized whenever someone whom they know nothing about looks at that picture another time. That's a theory that some people agree with and many people don't and judges do not have to agree with. Congress seems to have adopted that theory behind what it's done. And what it's done is binding or not binding depending on whether it makes that action binding or not binding, as I was saying to Judge Hardiman before. But she acknowledged that rationale and she made a point of it. I just struggle with her statement. She said, I believe in the opinion that there's going to be less deference given to 2G2.2. I don't see any deference to 2G2.2. As far as I can tell, it was cast aside. And then I think even the point heading in the opinion said something like, so now that I'm not going to consider this, now my frame of reference are the 3553A factors and the statutory minimum. Well, what about the statutory maximum? Why isn't that a frame of reference? Shouldn't a trial judge when sentencing say, well, look, my range is 5 to 20, and now I need to figure out where this defendant fits on that rather large scale. And there was an admission that this defendant had a variety of these enhancements. He earned a variety of these enhancements. Well, then how can someone who's earned a variety of these enhancements be at the very bottom of the statutory range other than if the trial judge thought, well, my frame of reference is the minimum, rather than the entire statutory range? Well, the statutory maximum is not 20. In this case, it was 110 years. And she didn't fail to understand that. Well, but we don't – I mean, the trial judge is we. I don't think many of us ever would consect people unless there were really egregious reasons. It happens once in a while. It happens in cases of producing child pornography and exploiting live children. You do see that. But the problem with this guidelines range, with the enhancements, was that it gets you quickly above the 20-year statutory mandatory minimum. And I'm struggling to see – I could understand how the trial judge might have said, look, two-point bump for use of a computer applies in 90 percent of the cases. I'm not going to put any weight on that. The two-point bump for under the age of 12, 90 percent of the cases, I'm not going to put any weight on that. But it's simply a fact that these other issues about the videos, the violence, and over 600 images, those are not remotely applicable in 90 percent of the cases. So how can those just be cast aside? Not to mention having them all together applicable in this particular case. Well, actually, they are applicable in a great many cases. Well, 40, 50, 60 percent, but that's not 90 percent. Right. When the judge looks at a statutory maximum, she should be saying to herself, not how many guideline enhancements apply to get us to this maximum, but what is the most egregious instance that I can imagine of the commission of this offense by a defendant who exhibits no mitigating circumstances as an individual? The defendant with the worst criminal record, with the most egregious circumstances, with the least excuse, with the no history, with the no blah, blah, blah. And this is clearly not that case. Right. I'm not suggesting that, but I'm wondering how it could be the other extreme. So when she looks at that and she says, one instance of such a case, one count of a case like that, Congress tells me to give a 20-year sentence to. How does this guy compare to that? And how does he compare to the least egregious case of distribution? Both. She should look at both. And I think it's not a question of just looking at the guideline enhancements by no means. And he is so far from an aggravated, you know, a most highly aggravated case. We've seen cases like that. I mean, I think of the King case that Your Honor wrote a few months ago where the man creates child pornography of his own sexual contact with his daughter and distributes it for money. I mean, you can't get hardly any worse, putting aside whether he had personal psychological mitigating circumstances. The offense severity, it's just, it's not in the same universe. So to say that Mr. Grover could reasonably, that the commission was suggesting that Mr. Grover could reasonably get a statutory maximum sentence tells us, and this is the question Judge Hayden was asking herself, that this guideline is not reasonable in her judgment. Another judge could say differently. But she was far from unreasonable in reaching the conclusion that this guideline, which sends you to a one-count statutory maximum long before you are in an egregious case, was not a guideline from which she could take helpful guidance. She seemed influenced also by the fact that the government didn't present a witness, but I found that odd because, I mean, legislators don't come in and testify. It's a trivial factor in the case. She emphasized it. She had 70 pages of terrific briefing from Sileski. She read it all and she said she considered it. The opinion says the government took a pass. That implies that the government didn't even try to meet its burden. It seemed to me the government did everything that it could possibly do to try to meet its burden. It didn't take a pass. It made all the submissions. She said they took a pass on calling a witness. They could have called a witness if they wanted to, and they didn't. They don't have to call. Mr. Culver, I think we've given you a comparable amount of extra time that we gave Ms. Sedlowski, so I'm going to pull the red light and ask Ms. Sedlowski to come up. I do want to ask her some questions. Ms. Sedlowski, before the actual sentencing, the government offered Mr. Grover a plea which would have involved just pleading to possession of child pornography, which would have been a far less serious offense with consequent sentencing. Then a couple of weeks after that, right before the trial, the government started adding enhancements or charges, right? That's not the factual sequence, actually. The government offered the plea two years before, and it was never accepted. It indicted. And then when did you add all the other things? Then you watched it again after you indicted. Then we offered it again, slightly more significant plea, turned it down, started to review the record for trial, looked at all the images that he had, all the trading that he'd done, sort of parsed through everything that had happened as we were preparing for trial, looked at the extent of his trading, looked at the content of the emails, the nature of his buddy list, how deeply involved he was in bartering. When we were preparing for trial, the trial assistant sat down with the charges and looked at whether she could readily prove all the elements of each offense. So she decided to supersede. It didn't change the guideline range. Except that it added counts so that now there was no cap at the statutory maximum. It did add counts. But it added counts. It broke out the conduct that he was charged with committing into receipts. Instead of receipt and distribution, he was now charged with possession, receipt, and transaction. But I understand you to say it didn't change the guideline range. It did. Possession was much less. It's way up now. Well, the only thing it did is it took the cap off the guideline range for the mandatory minimum. Except that he was really charged with two counts, so it didn't even change that. Well, I guess once you have the indictment. Because all of these offenses are consolidated into one guideline range, so it didn't change either one. But did the trial judge emphasize that? Was that a factor in the trial judge's sentence, the fact that the deal the government came up with later was not as generous to the defendant as the deal that was offered? It wasn't. And the reason that that is unreasonable is because it extrapolated from that to say that every time there's a harsh sentence and a lenient plea, that's a sign that this guideline range is too high, as opposed to saying in this individual case this defendant might be deserving of a lesser sentence. It said every high sentencing range automatically leads to this strange plea bargaining, and so we can't have effectively high sentences. You talked about the trial penalty, and I don't know that any of us who do this work can ignore the fact that we have these cases if you don't plead fast enough, you're going to have to plead to receipt, not possession. So, I mean, is that a trial penalty? I don't know. But she did make that distinction. She made the distinction about a trial penalty, and it's the extrapolation that the government objects to, the fact that any harsh sentence endemically leads to some kind of problem with lenient pleas, that by being lenient, now we have this great disparity as a result of harsh sentences. What the government would like the court to find in this case, whether it finds that the district court ultimately sufficiently distinguished or provided a sufficient rationale for distinguishing Congress' and the Commission's penalties and explaining why they're wrong, which I don't think it did, as the court indicated in Goff, this court found that you need to explain why you think these penalties are too harsh in these severe cases, and this court didn't do that. It didn't even address the rationales that are described in Goff at all. It said, I don't have to address these rationales because Congress wasn't acting and the Commission wasn't acting in its proper institutional role. And the defendant just referred to Kimbrough and said, Kimbrough is making clear that all the Commission needs, that the guidelines we like are those formulated by the Commission in its traditional, empirical sort of role. But Kimbrough explicitly says that the Commission acts in its traditional role when it responds to congressional directives. It says that is a classically formulated guideline. That is an appropriately formulated guideline. And so this court should find that district courts need to explain their reasons for disagreeing with the child pornography guidelines by identifying Congress' rationale and the Commission's rationale. And it is not sufficient simply to say that these are too harsh as a matter of fact and not get into why they're too harsh. And this court has put a lot of work into why the child pornography penalties matter. You know, you leave me with the impression that I started, which is that the government objects more to the opinion than to the amount of the sentence. Because the opinion in this sense, she threw down a challenge to the government and the government doesn't like that. That's the way I look at this. Now, maybe I'm wrong, but tell me why. I think I respect very much courts could have a range of opinions and I think the government respects that the courts could have a range of policy reactions to Congress and the Commission. What the government doesn't want to do is walk into every courtroom and have judges say these guidelines are nonsense. The Court of Appeals affirmed that they're nonsense. Congress didn't have a reason for passing them. But a lot of the district courts I gather from this survey really do not agree with the child pornography guidelines. But they're very specific about receipt and possession as opposed to distribution. If you look at the survey, 70% state distribution. Well, his distribution, I mean, he wasn't in the business. He didn't make any of these pictures. Production is an entirely separate guideline. We've had cases where they try to set up an assignation and then they go off, they cross the state lines and they go off with the kids, male or female. I mean, you know, he didn't do any of that. All of those are different guidelines, though. Bartering is a classic form of distribution and courts don't disagree with it. But the point is why? The point is courts can disagree. They can say that. They absolutely can. They can say I don't like it. But what they can't say is Congress didn't have five reasons for considering bartering more severe, and I disagree with them. You can't say Congress had no reason for passing this. It just wanted to pile on. But here you can say the Sentencing Commission had no reason because all the Sentencing Commission did, it seems to me, is follow in lockstep congressional directives with respect to these issues. The Sentencing Commission is responsible for the S&M enhancement. It's responsible for prompting the commission to clarify bartering and for Congress to clarify bartering. It's responsible for the enhancement for images of children under 12. It would be responsible for part of a computer enhancement. It put in distribution at the beginning. So it's responsible for a great deal of this. And as Congress is going through this, it's asked the commission to conduct empirical studies and give it information about what judges are thinking, what it is they don't like about these guidelines. But did the commission put those enhancements in before Congress started vigorously ratcheting up the mandatory minimum? The commission put in the enhancements for S&M, children under 12, and distribution before Congress came along. So this decision, and I think perhaps some of the other ones, might be a counterweight to the ratcheting up of the mandatory minimum. Isn't that what we're dealing with here? It is. It's absolutely fine for a court to say that when Congress put, increased the statutory mandatory minimum, I mean it can't disagree with the statutory mandatory minimum, but it can say, look, the guidelines that are attempting to be proportional now as a result of this statutory mandatory minimum result in things that are too high for some defendants and too low for others. And so we're looking at what Congress did and the commission did, and we're saying this didn't work out well for these and these reasons. But for all those judges who actually agree, who've looked at it and say, I agree, I actually think normatively this isn't a problem, and there are judges who think that. We don't know the reasons why in the survey they agree or they disagree. They will be disserved by an opinion that finds that Congress and the commission did nothing here they need to consider. But they're on their own. I have one more question. Go ahead. You mentioned, you said that the district judges are permitted to say what they are thinking, and that's really what Judge Hayden did here. And she did so at great length. I don't know quite how to phrase this, and maybe it comes from my roots as a district court judge, but are you suggesting that a district court judge cannot think about people and the effect of all of this on individuals' lives, that they can put on the record their thinking as long as it agrees with the government's thinking? And if it doesn't agree with the government's thinking, it's bad? No. The government does not believe that the court needed to agree with it at all or that the court couldn't take into account any reason why it found Congress's reasons to be wrong. But the district court, by just going into it in depth, missed what the reasons are, missed the opportunity to say, here's what Congress is doing wrong. It instead chose an approach which was, Congress doesn't have anything worth considering. It didn't do anything here. And a factually inaccurate finding that every defendant to come before the court, every child pornography defendant charts at the statutory max. That's factual error. There is no factual basis for that finding. But people come before the court. People. Yes. Absolutely. And the court should, as a matter of the 3553A factors addressing the individual and as a collective matter. And that was addressed at great length in this opinion, at great length, the 3553A factors. Yes. Absolutely. With respect to the defendant, I do not challenge the procedural reasonableness of the court's examination of Grover's personal factors. The government is not bringing the appeal on that ground. What the court is saying, what the government is saying, forgive me, is that when the court undertakes to say why Congress and the commission, who have put an enormous effort into this, have gone wrong, they need to at least say accurately what Congress and the commission did. Thank you. Thank you, Your Honor. Thank you. I don't think we need the transcript. We can listen. We can listen. Okay. Thank you. We will thank both counsel. We'll take the matter under advisement. All right. Mr. Fairfax, you're due on Monday, July 12th, 2010. Pat, are you sure Monday, July 4th? July 12th. Oh, okay. Okay. Thank you. Thank you.